Perretta v New York City Tr. Auth. (2024 NY Slip Op 04184)

Perretta v New York City Tr. Auth.

2024 NY Slip Op 04184

Decided on August 08, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 08, 2024

Before: Kern, J.P., Moulton, Gesmer, Mendez, Michael, JJ. 

Index No. 159594/19 Appeal No. 1885 Case No. 2023-03816 

[*1]Kathleen Zwiebel Perretta, Plaintiff-Appellant,
v
New York City Transit Authority, et al., Defendants-Respondents.

Jaroslawicz & Jaros PLLC, New York (David Tolchin of counsel), for appellant.
Anna J. Ervolina, MTA Law Department, Brooklyn (Timothy J. O'Shaughnessy of counsel), for respondents.

Order, Supreme Court, New York County (Denise M. Dominguez, J.), entered May 1, 2023, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion to renew her motion for summary judgment on liability, affirmed, without costs.
Plaintiff commenced this personal injury action torecover for injuries allegedly sustained on October 2, 2019, when asa passenger on an M15 bus, while attempting to change seats, she fell over a wheelchair restraint protruding into the aisle of the bus. She alleges that defendants were negligent in failing to retract and secure the wheelchair restraint that caused her fall. Defendants answered the complaint and served discovery demands on October 22, 2019. Plaintiff served discovery demands on defendants on November 17, 2019.
On February 13, 2020 the parties appeared in court for a preliminary conference. The court issued an order scheduling plaintiff's deposition on June 2, 2020, defendants' depositions on June 9, 2020, a status conference on July 16, 2020, and setting an end date for all discovery of February 19, 2021. Notably, although plaintiff provided defendants with a bill of particulars, she had not served responses to defendants' discovery demands before the February 13, 2020 preliminary conference order.
Approximately one month after the preliminary conference order, the Chief Administrative Judge issued an order effective March 17, 2020,[FN1] suspending all nonessential matters pending in Supreme Court because of the COVID-19 pandemic. A subsequent administrative order, dated March 19, 2020,[FN2] operated to suspend discovery in civil proceedings.
On February 27, 2020, in response to plaintiff's Freedom Of Information Law (FOIL) request, defendants provided plaintiff with a DVD video of the incident, showing plaintiff's fall, taken from inside the bus; the bus driver's supervisor's investigation report, including photographs depicting the wheelchair restraint; and the bus driver's accident report and handwritten statement. In his accident report, the driver noted that "as I was in the bus stop loading, I heard somebody fall," and that "she tripped over wheelchair restraint." In another report, he noted that "I was asked by superintendent Sanchez if I inspected the inside of the bus. My answer was no." In a supervisor's accident report, the supervisor noted that he "inspected interior of bus and found wheelchair securement not properly locked into place. See photos."
Plaintiff did not appear for the June 2, 2020 deposition, defendants did not appear for the June 9, 2020 deposition, and the parties did not appear for the July 16, 2020 status conference as directed by the February 13, 2020 conference order.
On July 20, 2020, plaintiff e-filed a prediscovery motion for summary judgment and to strike defendants' first affirmative defense. The motion was supported by her 50-h hearing transcript and the documents she obtained from the defendants on February 27, 2020, through the FOIL request[*2]. In her motion, plaintiff specifically pointed out that the bus driver admitted he did not inspect the bus aisle. Defendants opposed plaintiff's motion and cross-moved for summary judgment dismissing the complaint, arguing that the wheelchair restraint was open and obvious.
Supreme Court (Adams, J.), by order entered October 5, 2020, denied the motion and cross-motion, finding issues of fact existed that precluded granting any party summary judgment. The order denied the motions on the merits, did not grant any party leave to renew upon completion of discovery and did not state that the motion was denied "without prejudice." Plaintiff did not seek reargument, and although she filed a notice of appeal it was subsequently withdrawn. 
The parties then engaged in discovery beginning with an October 14, 2020 compliance conference order. That order and subsequent conference orders scheduled and rescheduled depositions through November 17, 2021. Plaintiff was deposed; defendants produced additional documents (a violations rules form containing statements consistent with the driver's and supervisor's accident reports, the MTA General Rules and Regulations and the bus driver's Training Manual); and the driver, the supervisor, and the superintendent were deposed.
On May 27, 2022, plaintiff sought leave to renew her prior motion for summary judgment on the issue of liability made prediscovery, and upon renewal, to be awarded summary judgment. In support of her motion, plaintiff included the deposition transcripts of the bus driver, the supervisor, and the superintendent who prepared defendants' accident reports; a copy of the MTA Rules and Regulations; and the bus driver Training Manual. Plaintiff argued that this "new evidence" discovered since her prior motion, for which "liability had seemed so clear," resolved any issue of fact regarding defendants' liability upon which the motion court had denied her prior motion for summary judgment. Plaintiff also argued that this information could not have been obtained with diligence because defendant failed to timely comply with her discovery demands and the discovery orders.
By order entered May 1, 2023, Supreme Court denied plaintiff's motion to renew, determining that the prior motion for summary judgment was decided on the merits, and plaintiff was not granted leave to refile upon the completion of discovery. It further determined that plaintiff chose to rely on evidence obtained through a FOIL request because discovery was delayed as a result of the COVID-19 pandemic, not because of defendants' failure to produce discovery, and that the evidence submitted was "additional and does not constitute facts unavailable to plaintiff when she first filed or that with due diligence such as discovery could not be obtained."
The motion court providently exercised its discretion in denying plaintiff's motion to renew. CPLR 2221(e)(2) and (3) require that a motion to renew "shall be based upon new [*3]facts not offered on the prior motion that would change the prior determination . . . and . . . shall contain reasonable justification for the failure to present such facts in the movant's first factual presentation" (see also American Audio Serv. Bur. Inc. v AT & T Corp., 33 AD3d 473, 476 [1st Dept 2006]). Plaintiff initially moved for summary judgment on July 20, 2020, before discovery was underway, as a means of circumventing the COVID-19 restrictions that suspended discovery, because as she stated upon seeking renewal, defendants' "liability seemed so clear."
In her rush to obtain summary judgment and to avoid the inevitable delays in discovery that resulted from the COVID-19 pandemic restrictions, plaintiff chose to rely on FOIL responses, believing that her submissions would be sufficient. She purposefully avoided any mention of outstanding discovery in her motion papers or in opposition to defendants' cross-motion. Supreme Court denied the summary judgment motions finding there remained multiple issues of fact. Her motion was not denied "without prejudice" nor was she granted "leave to renew" after discovery was completed. Having made these choices in the litigation, she cannot now be heard to complain that she was unable to obtain the evidence necessary to support her prior motion for summary judgment (see Matter of Weinberg, 132 AD2d 190, 214 [1st Dept 1987], appeal dismissed 71 NY2d 994 [1998] [it is not a basis for renewal that the movant believed its submissions on the initial motion were sufficient, but the movant failed to prevail]).
When moving to renew, a party must show it made diligent efforts to obtain the evidence it now relies on, and provide a reasonable justification for failing to include it in the prior motion (see Luna v Port Auth. of N.Y. & N.J., 21 AD3d 324, 324-326 [1st Dept 2005] [diligent efforts made in the form of serving a subpoena making a motion to hold the nonparty witness in contempt, to obtain deposition testimony of nonparty, later used as new evidence on a renewal motion]; Ramos v City of New York, 61 AD3d 51, 54 [1st Dept 2009], withdrawing appeal, 12 NY3d 922 [2009]) .
Plaintiff's failure to exercise due diligence in obtaining the probative facts and to provide a reasonable justification for her failure to present these facts in the prior motion warrant denial of the motion (see Boglin v New York City Hous. Auth., 209 AD3d 518 [1st Dept 2022]). "Renewal is granted sparingly and should not be used as a second chance freely given to parties who have failed to exercise due diligence in making their first factual presentation" (Wade v Giacobbe, 176 AD3d 641 [1st Dept 2019], lv dismissed 35 NY3d 937 [2020]; Priant v New York City Tr. Auth., 142 AD3d 491, 492 [1st Dept 2016], lv denied 31 NY3d 1134 [2018]) .
Plaintiff argues that she was deprived of the relevant evidence when she made the first motion for summary judgment, due to defendants' failure to comply with discovery demands and the preliminary conference [*4]order. However, plaintiff fails to show any due diligence on her part to obtain this evidence, and to provide a reasonable justification for failing to present these facts in her prior motion. She took no affirmative steps to compel discovery, did not appear for her deposition, and did not seek to reschedule defendants' depositions before moving for summary judgment (see Bronson v Jacobs, 204 AD3d 531, 531 [1st Dept 2022]; Eddine v Federated Dept. Stores, Inc., 72 AD3d 487, 487-488 [1st Dept 2010]). Moreover, successive summary judgment motions are improper "in the absence of newly discovered evidence or other sufficient cause" (Dembele v Action Carting Envtl. Servs. Inc., 211 AD3d 508, 508 [1st Dept 2022] [internal quotation marks omitted]; Brown Harris Stevens Westhampton, LLC v Gerber, 107 AD3d 526, 527 [1st Dept 2013]). Fragmented attacks upon a defense through multiple summary judgment motions are not permissible (Marine Midland Bank v Fisher, 85 AD2d 905, 906 [4th Dept 1981]). Plaintiff's renewal motion is a second attempt at summary judgment on liability, which was denied by the court on her first motion. Her first motion was premature. She should have waited for the completion of discovery before moving for summary judgment and her renewal motion should not be granted unless the new facts resolve or eliminate the factual issues found by the court in denying her first motion (Pough v Aegis Prop. Servs. Corp., 186 AD2d 52, 53 [1st Dept 1992]).
Plaintiff for the most part supported her motion to renew with the same evidence she submitted in her first motion for summary judgment. In their depositions, the witnesses testified consistent with their prior statements and reports, and it is not clear if the only other evidence on which plaintiff relies - - the MTA Rules and Regulations and the Training Manual - - would resolve or eliminate the factual issues found by the court (id). In any event, internal rules which impose on the defendants a higher standard of care than required by common law are inadmissible to prove their negligence (Sebhat v MTA N.Y. City Tr., 144 AD3d 575, 576 [1st Dept 2016]).
Plaintiff has not established that the alleged new evidence would resolve or eliminate the factual issues found by Supreme Court. Therefore, we decline to consider whether this alleged new evidence would change the court's prior determination.
We have considered plaintiff's remaining arguments and find them unavailing.
All concur except Michael, J. who dissents in a memorandum as follows:

MICHAEL, J. (dissenting)
 

The trial court should have granted plaintiff leave to renew her prior summary judgment motion. The majority holds that plaintiff, having made the decision to file for summary judgment prediscovery, must live with it. Yet that is not the law, otherwise no party could seek to renew based upon new evidence that was previously unavailable. In fact, the opposite is true, as New York law provides a method for litigants who discover [*5]new facts that were not ascertainable at the time of their initial motion to again seek summary judgment (see CPLR 2221[e]).
Here, plaintiff obtained new facts previously unavailable to her due to the pandemic and defendants' noncompliance with discovery, including material admissions by defendants' employees that (1) plaintiff tripped over a wheelchair restraint protruding into the aisle of an M15 bus owned by defendants; (2) the protrusion of the restraint created a tripping hazard; and (3) the bus driver was required to perform a pre-trip inspection of the bus and to put the restraint back into place but failed to do so. As this information would have changed the court's prior determination, plaintiff should have been granted leave to renew.
Background Plaintiff commenced this negligence action on October 2, 2019, alleging she sustained injuries on May 15, 2019, after she tripped and fell over a wheelchair restraint protruding into the aisle of an M15 bus owned by defendants. Shortly after initiating the action, plaintiff served defendants with discovery demands on November 14, 2019. A preliminary conference order dated February 13, 2020 (PC order), scheduled depositions for June 2020 and a compliance conference for July 16, 2020.
In March 2020, merely one month after the PC order was issued, the New York State court system suspended all pending civil proceedings, including discovery, due to the global pandemic. As a result, the depositions scheduled for June 2020 did not occur and the July 2020 compliance conference was canceled. Meanwhile, plaintiff received responses to her FOIL request, on February 27, 2020. The responses contained video footage of the incident [FN3]; a brief written statement by the driver of the M15 bus, Phil Stanley White; White's Daily Trip Sheet; White's MV-104 form; an investigation report by NYCTA surface line dispatcher, Manuel Freytes; and photos.[FN4]
Specifically, the video showed plaintiff entering the bus, sitting down briefly, standing up again, turning, and immediately tripping over an extended wheelchair restraint device that protruded into the aisle;
White's brief statement provided, "As I was in the bus stop loading, I heard somebody fall. I was asked by Supt. Sanchez if I inspected the inside of the bus. My reply was no";
White's Daily Trip Sheet stated, "As I was in the bus stop loading, I heard somebody fall";
White's MV-104 form simply stated, "She tripped over wheelchair restraint";
Freytes' investigation report stated that he investigated the interior of the bus and found the wheelchair securement not properly locked into place; and the photos showed the wheelchair restraint protruding into the aisle on the floor.
Based on the FOIL evidence and plaintiff's § 50-h hearing testimony, plaintiff moved, among other things, for summary judgment on the issue of liability, on July 20, 2020. Defendants opposed and cross-moved for summary judgment. On September 30, 2020, the trial court[*6](Adams, J.) denied the parties' respective motions. The court found that issues of fact existed as to: (1) whether the wheelchair restraint was in a proper position at the time of the incident; (2) who or what caused the restraint to be in that position; (3) whether its position was inherently dangerous; and (4) whether the restraint was readily observable so that plaintiff, like all other bus passengers shown in the video, should have been able to avoid tripping over the restraint.
Discovery did not begin again in earnest until the compliance conference order, dated October 14, 2020, directed defendants to respond to plaintiff's November 2019 discovery demands and rescheduled the parties' depositions. A nearly two-year period of discovery ensued. Multiple orders were issued, which again rescheduled the parties' depositions; directed defendants to produce documents, including the Rules & Regulations Governing Employees of MTA New York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority, and South Brooklyn Railway (MTA Rules and Regulations) and the Student Bus Operator Instruction Manual (Training Manual); and directed defendants to produce the NYCTA dispatcher Freytes and NYCTA superintendent Jorge Sanchez for depositions. Defendants also produced a report prepared by Freytes, dated May 15, 2019 (Violation Form). 
As a result, plaintiff learned a number of new facts that provided the basis for her motion to renew. Namely, the MTA Rules and Regulations provided, "Employees must take every precaution required by conditions to prevent accidents or injuries to persons or damage to property . . . the safety of customers must receive first consideration."
Additionally, the Training Manual instructed bus drivers, also referred to as "bus operators," to perform a pre-trip inspection of both the interior and exterior of the bus prior to placing the bus in motion. For pre-trip inspections, it provided, "Always check the interior of the bus before driving to ensure customer safety. Aisles and stairwells must always be clear." It further advised to "[c]heck for all required wheelchair restraints."
Also, the Violation Form created in connection with the accident stated, "Violation: Failure to pretrip inside Bus upon making relief." It further stated, "Remarks: Female customer tripped over the wheelchair securement on the floor of the bus that was protruding out and was not properly secured into place. Myself and Supt Sanchez asked [bus operator] if he pretrip the inside of bus upon making relief. [Bus operator] stated no he did not."
Chief among the information obtained during discovery was the deposition testimony of Freytes, Sanchez, and White. In particular, Freytes testified that White admitted to him that he had not performed a pre-trip inspection and did not notice the restraint was not in its proper place prior to the incident. Further, when asked, "Would you say if [the restraint is] not secured in its proper place [*7]that it would be a tripping hazard if its protruding in the aisle?" Freytes answered, "Yes."
Similarly, Sanchez testified that White admitted to him that he did not perform the pre-trip inspection and did not notice the restraint was not properly secured.
Finally, White admitted during his testimony that he was responsible for failing to put the restraint back into place. He testified that while loading passengers, he heard a noise and saw a woman on the floor in his rearview mirror. She told him that she had fallen over the wheelchair restraint. When asked, "When you saw the lady on the ground and you saw the device, did you think it was in the proper position?" White responded, "no" because "there was no wheelchair there." He admitted that it was his responsibility to take out the wheelchair restraint when assisting a wheelchair passenger and to put it back in place when the wheelchair passenger disembarked.
Based on the above discovery, plaintiff moved for leave to renew her prior summary judgment motion, on May 27, 2022.[FN5] Defendants opposed.
On April 27, 2023, the trial court (Dominguez, J.) denied plaintiff's motion, finding that "the evidence submitted now is additional and does not constitute new facts unavailable to Plaintiff when she first filed or that with due diligence such as discovery could not be obtained."[FN6] Discussion A motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination," and "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221[e][2], [3]). "The rule is not inflexible, and renewal may be granted in the court's discretion, in the interest of justice, even on facts that were known to the movant at the time of the original motion" (Eddine v Federated Dept. Stores, Inc., 72 AD3d 487, 487 [1st Dept 2010]). However, failure to exercise due diligence in obtaining the new facts and failure to provide a reasonable explanation for not presenting such facts on the prior motion warrant denial of the motion (id.; see also Boglin v New York City Hous. Auth., 209 AD3d 518, 518 [1st Dept 2022]). Reasonable Justification/Due Diligence
The majority asserts that plaintiff took no affirmative steps to compel discovery, did not appear for her deposition, or seek to reschedule defendants' depositions before moving for summary judgment. The majority's recitation of the procedural history omits the fact that plaintiff could not take such "affirmative steps" given the pandemic restrictions in place. Plaintiff swiftly served discovery demands on defendants after commencing this action and persistently pursued discovery once the subsequent pandemic restrictions were removed.
Over the course of nearly two years, multiple discovery orders were issued requiring defendants to produce documents and witnesses for depositions, including, among other things, the Rules and Regulations, deposition testimony from Freytes [*8]and Sanchez, and the Training Manual, which plaintiff used to support her renewal motion. In short, plaintiff diligently pursued information from defendants.
Moreover, plaintiff's explanation for not presenting such information with her prior motion was eminently reasonable. By the time of the preliminary conference in February 2020, defendants had not yet responded to plaintiff's discovery demands. Various discovery deadlines were imposed by the PC Order, but one month later, administrative orders directed New York courts to suspend operations of civil proceedings, including discovery matters. Having no recourse for outstanding discovery and no knowledge of when discovery matters would be considered, plaintiff decided to move the case forward and filed for summary judgment based on her FOIL responses and § 50-h testimony.[FN7]
Although in hindsight her initial motion may have been premature, that does not prevent plaintiff from seeking leave to renew based on newly discovered evidence unavailable to her at the time of her initial motion (see Luna v Port Auth. of N.Y. & N.J., 21 AD3d 324, 326 [1st Dept 2005] [holding that "a motion for leave to renew is not subject to the same time constraints as govern a motion for leave to reargue" and granting the plaintiff leave to renew based on her inability to obtain deposition testimony prior to the parties' summary judgment motions]; Ramos v City of New York, 61 AD3d 51, 54 [1st Dept 2009] ["[A] motion for leave to renew is not subject to any particular time constraints . . . [it] simply requires a showing of new facts not offered on the prior motion that would change the prior determination . . . and a reasonable justification for the failure to present such facts on the prior motion."] [internal citations and quotations omitted]).
Nor was plaintiff prevented from seeking leave to renew where the court did not explicitly grant leave to renew upon completion of discovery or deny plaintiff's motion "without prejudice." First, the majority cites no authority to support this notion. Second, summary judgment was not denied "with prejudice." Third, it is illogical to require the prior order to grant leave to renew in the event that new facts may become available, as a condition to seeking renewal.
In sum, plaintiff was not barred from seeking leave to renew as there is no blanket rule against filing successive summary judgment motions (see Pough v Aegis Prop. Servs. Corp., 186 AD2d 52, 53 [1st Dept 1992] [although multiple summary judgment motions are discouraged, this policy has no application where the first motion, made prior to discovery, is denied on a factual issue that is later resolved]). As the majority acknowledges, "her renewal motion should not be granted unless new facts resolve or eliminate the factual issues found by the court in denying her first motion." New Facts/Prior Determination
Here, plaintiff persuasively argues that the new evidence obtained resolved the factual issues found by [*9]the court and would therefore have changed the court's prior determination. The court denied plaintiff summary judgment based on the following stated questions of fact: whether the wheelchair restraint was properly positioned, who or what caused the restraint to be in that position, and whether the position of the restraint was inherently dangerous.[FN8] The evidence plaintiff obtained during discovery answered those questions.
Specifically, as to whether the wheelchair restraint was properly positioned, the Violation Form prepared by Freytes on the day of the incident stated that a female customer "tripped over the wheelchair securement on the floor of the bus that was protruding out and was not properly secured into place." Additionally, the bus driver admitted during his deposition testimony that the restraint was not properly positioned when he saw plaintiff on the ground after she tripped.
As to the issue of who or what caused the restraint to be improperly positioned, the bus driver testified that it was his responsibility to put the restraint back in place, which is supported by the Training Manual's instruction that "[a]isles and stairwells must always be clear" and to "[c]heck for all required wheelchair restraints." Moreover, both Freytes and superintendent Sanchez testified that White admitted he had not performed a pre-trip inspection of the interior of the bus, and the Violation Form stated there was a failure to "pre-trip" the bus.
Finally, as to whether the position of the restraint was inherently dangerous, Freytes admitted during his testimony that if the wheelchair restraint is not secured in its proper place, it would be a tripping hazard if protruding into the aisle.
Accordingly, it is my view that plaintiff's motion for leave to renew should have been granted.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 8, 2024

Footnotes

Footnote 1: AO/3/20

Footnote 2: AO/71/20

Footnote 3: The video footage begins at 3:50 pm, after the bus driver's shift began around 3:36 pm.

Footnote 4: The statement, trip sheet, MC-104 form, and investigation report are dated May 15, 2019.

Footnote 5: Plaintiff filed the note of issue and certificate of readiness for trial on January 28, 2022. Defendant moved to vacate, which was resolved "on consent of the parties," pursuant to the court's May 24, 2022 decision and order.

Footnote 6: Contrary to the majority's holding, the trial court did not find that plaintiff initially moved for summary judgment solely due to the pandemic as opposed to defendants' noncompliance. The two go hand in hand — plaintiff could not enforce defendants' compliance due to the restrictions imposed during the pandemic and therefore, moved for summary judgment based on her FOIL responses and § 50-h testimony. 

Footnote 7: The majority speculates that "in her rush to obtain summary judgment," plaintiff chose to rely on FOIL responses and "purposefully avoided any mention of outstanding discovery in her motion papers or in opposition to defendants' cross-motion." However, in support of her initial motion, plaintiff stated, "Plaintiff's counsel obtained the above photos through a FOIL request (the Defendants have not responded to any discovery demands in this matter)." And in opposition to defendants' cross-motion, plaintiff stated, "It's worth noting that there has been no discovery exchanged regarding Plaintiff's vision." 

Footnote 8: The court's additional question of whether the wheelchair restraint was readily observable goes to the issue of comparative fault and is not a basis to deny summary judgment (see Saretsky v 85 Kenmare Realty Corp., 85 AD3d 89, 92 [1st Dept 2011] ["Finding a hazardous condition to be open and obvious is not fatal to a plaintiff's negligence claim, but rather is relevant to plaintiff's comparative fault, and hence summary judgment dismissal is not appropriate."]).